IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID CARLTON, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CV293 |
| | ) | |
| V. | ) | |
| | ) | |
| UNION PACIFIC RAILROAD, and | ) | MEMORANDUM AND ORDER |
| UNION PACIFIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendants Union Pacific Railroad and Union Pacific Corporation's partial motion to dismiss, motion for summary judgment, and objection to plaintiff David Carlton's motion to strike. Filing Nos. 42, 63, 79, 78. Plaintiff seeks a declaration that defendants' conduct violated plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000e-3 (hereinafter, "Title VII"); 42 U.S.C. § 1981; the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. § 48-1101 *et seq.*; and Nebraska Revised Statute § 20-148. Plaintiff further seeks reinstatement of his former job including all back pay, job related benefits and increments, and interest thereon. If the court determines reinstatement is not appropriate, the plaintiff requests front pay in addition to all back pay and benefits. Additionally, plaintiff seeks compensatory damages, punitive damages, an injunction prohibiting defendants from further discriminating against plaintiff, attorney's fees and costs, and any other additional relief. Filing No. 34 (amended complaint). Jurisdiction is proper under 28 U.S.C. § 1331, providing the court original jurisdiction over all civil actions arising under the Constitution and laws of the United States.

**Background**

Defendants, corporations both licensed to do business in the state of Nebraska, employed plaintiff, a white male resident of Nebraska, from June 1998 through July 2004. Filing No. 34. Plaintiff worked as a signalman for defendants. Filing No. 71. The plaintiff alleges that in July 2003,[1] he participated in an investigation conducted by the defendants concerning claims of racial discrimination involving an African American coworker, Autry Coleman ("Coleman"). Filing No. 34; Filing No. 66, Exhibit 4, Carlton Dep. 94:6-11, 94:20-24. Plaintiff reportedly provided testimony substantiating Coleman's charge of on-the-job racial harassment and discrimination directly to defendants' EEO office. Filing No. 34, ¶ 8; Filing No. 71; Filing No. 66, Attachment 3, Martin Dep. 58:4-13. Additionally, plaintiff alleges that he reported retaliation and mistreatment to management officials and filed EEO complaints against lead signalman Richard Jepson ("Jepson") and Herman Martin ("Martin"), director of signal maintenance. Filing No. 71, ¶¶ 35, 36, 42, 43; Filing No. 73, Attachment 1, Carlton Dep. 155:18-156:1, 159:18-160:17. Defendants reportedly closed its investigation into plaintiff's complaints against Jepson and Martin after defendants found no evidence of retaliation. Filing No. 66, Attachment 4, Carlton Dep. 142:20-143:6; Filing No. 66, Attachment 12; Filing No. 66, Attachment 11, pp. 1-2.

Plaintiff maintains that after participating in protected activities, defendants retaliated against plaintiff by labeling him a troublemaker, accusing him of wrongdoing, writing him

---

[1] Defendants admit that plaintiff engaged in protected activity, but report the date as on or about March 2003. Filing No. 36, ¶ 8. Defendants later claim that plaintiff participated in the protected activity in June 2003, and plaintiff maintains Coleman made his discrimination complaint in June 2003. Filing No. 64, ¶ 13; Filing No. 71. Yvonne A. Method-Walker, an EEO compliance manager for defendants, stated that plaintiff and Coleman made their complaints in the summer of 2003. Filing No. 73, Attachment 5, Method-Walker Dep., p. 49, 43:1-13.

up for complaining of continued retaliation, assigning him to a different manager, assigning him to work with the co-worker who made discriminating remarks to Coleman, harassing him, and subjecting him to discipline without cause.  Filing Nos. 34; 71, ¶¶ 38, 40, 41, 43, 44, 49.  Furthermore, plaintiff maintains that following his participation in the protected activities, someone stole his personal property, vandalized his vehicle, and wrote "nigger lover" on his helmet.  Filing No. 71, ¶ 48; Filing No. 73, Attachment 1, Carlton Dep. 108:17-109:23.  Defendants terminated plaintiff's employment in July 2004 after plaintiff purportedly engaged in an altercation with coworker Patrick Coker ("Coker").  Filing Nos. 34, ¶ 12; 71; Filing No. 66, Attachment 7, Coker Dep. 12:4-10.  This alleged altercation occurred at a hotel in Colorado where plaintiff and Coker stayed while working a job in the area.  Filing No. 73, Attachment 1, Carlton Dep. 7:19-23; Filing No. 71, ¶ 57.  Plaintiff maintains he never pushed or assaulted Coker; rather, plaintiff allegedly put his hand on Coker's chest when Coker attempted to bump him with his chest.  Filing No. 71, ¶ 56.

Defendants maintain that at a morning meeting the day after the alleged altercation, plaintiff admitted to pushing Coker and said the incident did not violate defendants' corporate policy because it occurred after hours.  Filing No. 64, ¶¶ 51, 53.  Defendants conducted plaintiff's discipline hearing on August 6, 2004, where Coker and supervisors testified.  *Id.* ¶¶ 58, 62; Filing No. 66, Attachments 8-9.  Defendants reportedly terminated plaintiff's employment as a result of plaintiff's altercation with Coker.  Filing No. 64 ¶ 61; Filing No. 66, Attachment 4, Carlton Dep. 68:20-25.  Defendants charged plaintiff with a Rule 1.7[2] violation that carried a Level 5 penalty, termination, because it involved physical touching over a work related issue.  Filing No. 66, Attachment 5, O'Connor Dep. 67:24-

---

[2]Rule 1.7 states that "[e]mployees must not enter into altercations with each other, play practical jokes, or wrestle while on duty or on railroad property."  Filing No. 73, Attachment 6, p. 20.

68:12; Filing No. 64, ¶ 56; Filing No. 71, ¶ 81; Filing No. 66, Attachment 3, Martin Dep. 80:16-23, 81:5-82:23, 85:20-88:24 (discussing whether plaintiff's actions were considered off-duty and work-related).

Plaintiff brought suit in the District Court of Douglas County, Nebraska, alleging claims of unlawful retaliatory discharge in violation of Title VII and 42 U.S.C. § 1981 (Counts I and II); retaliatory hostile work environment claims in violation of Title VII and 42 U.S.C. § 1981 (Counts III and IV); and retaliation and retaliatory hostile work environment claims in violation of Neb. Rev. Stat. § 48-1114(2) (NFEPA) and Neb. Rev. Stat. § 20-148 (Count V). Filing No. 1, Part 4 (labeled Filing No. 1-5); Filing No. 34 (amended complaint). Defendants removed the action to this court on June 22, 2005, alleging jurisdiction under 28 U.S.C. §§ 1331 and 1441(a). Filing No. 1, Part 1.

This court finds that plaintiff has attempted in five different ways to assert two causes of action: retaliation and hostile work environment. Attempts at wording a claim so as to include multiple bases does not create a new cause of action. In subsequent briefs on defendants' partial motion to dismiss and motion for summary judgment, defendants referred to plaintiff's claims as retaliation harassment. For organization and clarity purposes, the court will address the parties' arguments as it applies to two claims: Counts I and II (unlawful retaliatory discharge), and part of Count V (retaliation) are claims of retaliation; Counts III, IV, and part of V (retaliatory hostile work environment) are claims of hostile work environment.

**Legal Standards**

Title VII prohibits employers from retaliating against employees who file charges of discrimination as well as those who assist others in opposing discrimination. 42 U.S.C.

§ 2000e-3 (2006); *EEOC v. Kohler Co.*, 335 F.3d 766, 772 (8th Cir. 2003). Courts apply the same standards to claims brought under Title VII, 42 U.S.C. § 1981, and NFEPA. *Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906, 907 (8th Cir. 2003); *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002). Title VII is not a "general civility code" for the workplace, and it does not prohibit harassment in general. *Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1086 (7th Cir. 2000).

Courts employ the *McDonnell Douglas*[3] burden-shifting framework to evaluate such claims. *Buettner v. Eastern Arch Coal Sales Co.*, 216 F.3d 707, 713 (8th Cir. 2000) (the *McDonnell Douglas* burden-shifting analysis applies to claims of retaliation); *Jin Ku Kim v. Nash Finch Co.*, 123 F.3d 1046, 1056 (8th Cir. 1997) (the *McDonnell Douglas* analysis is applicable to 42 U.S.C. § 1981 claims in employment cases).

The first part of the *McDonnell Douglas* analysis requires that the complainant bear the burden of establishing a prima facie case of racial discrimination. *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination. *Id.* at 802. If the employer carries this burden of production, the presumption of unlawful discrimination drops, and at the third and final stage, the burden then shifts back to the plaintiff to rebut the defendant's explanation by showing the proffered reason is actually a pretext for intentional discrimination. *Moschetti v. Chicago, Cent. & Pac. R.R.*, 119 F.3d 707, 709 (8th Cir. 1997); *Hossaini v. Western Mo. Medical Ctr.*, 97 F.3d 1085, 1088 (8th Cir. 1996).

At the pretext stage of the *McDonnell Douglas* framework, the burden for determining whether employees are similarly situated to the plaintiff is rigorous. *Wheeler*

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

5

*v. Aventis Pharms.*, 360 F.3d 853, 858 (8th Cir. 2004). "Employees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways." *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994) (quotations and citation omitted). Furthermore, the misconduct of more leniently disciplined employees must be of comparable seriousness to be probative evidence of pretext. *Id.* at 972.

### A. Retaliation

A plaintiff establishes a prima facie case of retaliation by showing that: (1) the plaintiff engaged in protected conduct by either opposing an act of discrimination made unlawful by Title VII or participating in an investigation under Title VII; (2) the plaintiff "suffered an adverse employment action; and (3) the adverse action was causally linked to the protected conduct." *Arraleh v. County of Ramsey*, 461 F.3d 967, 977 (8th Cir. 2006). "An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1119 (8th Cir. 2006) (*quoting Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005)); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999). Participating in protected activity does not insulate an employee from discipline for disrupting the workplace. *Kiel*, 169 F.3d at 1136.

"An adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities." *Tademe v. St. Cloud State Univ.*, 328 F.3d 982, 992 (8th Cir. 2003) (*quoting Bradley v. Widnall*, 232 F.3d 626, 632 (8th Cir. 2000)). Actions short of termination may constitute an adverse employment action within the meaning of the statue, but "not everything that makes an

6

employee unhappy is an actionable adverse action." *Manning v. Metropolitan Life Ins. Co.*, 127 F.3d 686, 692 (8th Cir. 1997) (*quoting Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997)).  Ostracism and rudeness by supervisors and coworkers do not rise to the level of an adverse employment action.  *Gagnon v. Sprint Corp.*, 284 F.3d 839, 850 (8th Cir. 2002); *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 969 (8th Cir. 1999).  A plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning it might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2415 (2006) (quotations and citations omitted).

    **B.**    **Hostile Work Environment**

For a plaintiff to succeed on a hostile work environment claim, the plaintiff must prove: (1) the plaintiff is a member of a protected class; (2) the plaintiff "was exposed to unwelcome harassment; (3) the harassment was based on a protected characteristic of the plaintiff; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassing behavior, but failed to take proper action to alleviate it." *Arraleh*, 461 F.3d at 978.  A plaintiff establishes a hostile work environment claim by proving that the alleged conduct was extreme enough that it amounted to a change in the terms and conditions of employment.  *Burkett v. Glickman*, 327 F.3d 658, 662 (8th Cir. 2003).  Unless the conduct is extremely serious, isolated incidents of offensive conduct and offhand comments do not constitute a hostile work environment.  *Id.*

**Defendants' Partial Motion to Dismiss Hostile Work Environment Claims**

In reviewing a complaint on a Rule 12(b)(6) motion, the court must consider all of the facts alleged in the complaint as true, and construe the pleadings in a light most favorable to the plaintiff. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A dismissal is not lightly granted. "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). When accepting the facts of the complaint as true, a court will not, however, "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (*citing Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Therefore, a dismissal under Rule 12(b)(6) is granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief," *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999), such as a missing allegation about an element necessary to obtain relief or an affirmative defense or other bar, *see generally Doe v. Hartz*, 134 F.3d 1339, 1341 (8th Cir. 1998).

Defendants filed a partial motion to dismiss plaintiff's claims for retaliatory hostile work environment pursuant to Federal Rule of Civil Procedure 12(b)(6). Filing No. 9. The court granted plaintiff's request for leave to file an amended complaint and dismissed defendants' motion without prejudice to reassertion. Filing No. 31. In the amended complaint, plaintiff incorporated the elements of a hostile work environment claim. Filing No. 34, ¶ 11. Plaintiff alleged that he was closely associated with a protected class

member; that he was harassed; that a causal connection existed between the harassment and plaintiff's association with the protected class member; that the harassment affected plaintiff's employment; and that plaintiff's employer knew or should have known of the harassment and taken remedial action. *Id.* Defendants again filed a partial motion to dismiss what the court now characterizes as plaintiff's hostile work environment claims (Counts III, IV, and part of V), alleging plaintiff failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Filing Nos. 42, 37.

Defendants contend that the Eighth Circuit does not recognize a retaliation claim predicated on a hostile work environment theory, and as such, defendants request that this court dismiss plaintiff's claims for hostile work environment. Filing No. 37. Defendants argue that plaintiff did not suffer an "adverse employment action" because the term requires an "ultimate employment decision," like hiring, granting leave, discharging, promoting, and compensating.[4] *Id.*; Filing No. 40. Further, defendants maintain that plaintiff is not a member of a protected group as required by a hostile work environment claim; defendants argue that any alleged hostility toward plaintiff was premised on plaintiff's

---

[4] In its brief, defendants cite the case of *Wenzel v. Missouri-American Water Co.*, 404 F.3d 1038, 1042 (8th Cir. 2005), for this standard. The court does not find this standard articulated in *Wenzel*, but the Supreme Court recently stated "[t]he Fifth and the Eighth Circuits have adopted a more restrictive approach. They employ an 'ultimate employment decision' standard, which limits actionable retaliatory conduct to acts such as hiring, granting leave, discharging, promoting, and compensating." *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2410 (2006) (quotations and brackets omitted). In *Burlington Northern*, the Supreme Court expanded the scope of actions considered adverse under Title VII retaliation claims. For purposes of a discrimination claim, an employment action can be "adverse" if it has a material impact on employment. *Burlington Northern*, 126 S. Ct. at 2412-15. A retaliation action, however, can be "adverse" even if it does not have a material impact on employment, provided it might discourage unfettered access to the statutory protections of Title VII. *Id.*

participation in Coleman's complaint of race discrimination, and not any anti-male or anti-race animus toward the plaintiff himself. *Id.*

Plaintiff recommends that this court adopt Seventh Circuit precedent accepting retaliatory hostile work environment as a cause of action. Filing No. 38. Plaintiff cites *Walker v. Mueller Indus.*, 408 F.3d 328, 333 (7th Cir. 2005), and *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001) (hostile environment can be retaliatory), for the proposition that retaliatory harassment constitutes actionable retaliation if it is severe enough to cause an adverse employment action, *i.e.*, a significant change in the plaintiff's employment status. *Id.* The plaintiff contends that according to the defendants' argument, an employer could continually subject an employee who engaged in protected activity to retaliatory harassment "for decades without liability," so long as the employee is not fired or demoted. *Id.* Plaintiff further argues that if this court finds that plaintiff is not a member of a protected group based on his participation in protected activities, plaintiff's claims are still actionable under Title VII and 42 U.S.C. § 1981 because defendants allegedly subjected plaintiff to continued discrimination and retaliation due to his association with Coleman. *Id.*

This court declines to accept Seventh Circuit precedent because the court finds plaintiff has alleged two separate claims: retaliation and hostile work environment. The court previously permitted plaintiff to amend its complaint and properly plead the elements of a hostile work environment claim. Filing No. 31. The court finds plaintiff's amended complaint contains those elements necessary to support the requirements for such a claim. Filing No. 34. Therefore, defendants' partial motion to dismiss plaintiff's hostile work environment claims (Counts III, IV, and part of V) is denied.

**Defendants' Motion for Summary Judgment**

The summary judgment rule is designed to isolate and dispose of factually unsupported claims or defenses. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). A motion for summary judgment is granted when the court determines there is no genuine issue of material fact, and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In ruling on a motion for summary judgment, a court views all facts in the light most favorable to the nonmoving party and gives the nonmoving party the benefit of all reasonable inferences. *Prudential*, 121 F.3d at 366. If the defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 174 (8th Cir. 1987).

A court must not weigh evidence or make credibility determinations, but must focus on whether a genuine issue of material fact exists for trial. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003); *see Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir. 1979); *see also United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978). A material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court should deny summary judgment where the evidence supports conflicting conclusions. *Kells v. Sinclair Buick-GMC Corp. Truck, Inc.*, 210 F.3d 827, 830 (8th Cir. 2000); *Johnson*

*v. Minnesota Historical Soc.*, 931 F.2d 1239, 1244 (8th Cir. 1991). A court further determines materiality of a disputed fact from the substantive law governing the claim. *Anderson*, 477 U.S. at 248. "Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material." *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998).

Once a defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings; rather, the plaintiff must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). In order to survive summary judgment, the nonmoving party must make a sufficient showing concerning every essential element of the case on which the nonmoving party bears the burden of proof. *Osborn v. E.F. Hutton & Co.*, 853 F.2d 616, 618 (8th Cir. 1988); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A plaintiff in a Title VII case can survive summary judgment in one of two ways: (1) by producing direct evidence of discrimination or retaliation; or (2) by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* three-step burden shifting analysis. *Russell v. Kansas City*, 414 F.3d 863, 866-67 (8th Cir. 2005). The court finds that no direct evidence of a retaliation or hostile work environment exists. Accordingly, the *McDonnell Douglas* analysis applies to both claims, and it is the plaintiff's burden to establish a prima facie case of retaliation and hostile work environment.

**Retaliation**

Defendants filed a motion for summary judgment requesting that plaintiff's claims should be dismissed as a matter of law. Defendants do not dispute that plaintiff engaged

in activity protected by Title VII, or that an adverse employment action, plaintiff's termination, occurred. Filing No. 64. However, defendants deny that its purported actions constitute retaliation or that any causal connection existed between the protected activity and plaintiff's termination. *Id.* Defendants argue that plaintiff cannot establish a prima facie case of retaliation without the causal connection element, and even if it could, defendants had a legitimate, nondiscriminatory reason for terminating plaintiff's employment.

Plaintiff contends that defendants acted in a retaliatory manner by charging plaintiff with violating Rule 1.7, a rule prohibiting altercations between employees. Plaintiff argues that defendants applied Rule 1.7 to plaintiff in a discriminatory manner based on comparator evidence where defendants allegedly did not charge other employees with Rule 1.7 violations after they engaged in altercations. Filing No. 71. Plaintiff contends that this disparate treatment establishes pretext because he was treated less favorably than similarly situated employees who did not engage in protected activities. *Id.*

Defendants concede and the court finds that plaintiff engaged in protected conduct and that plaintiff suffered an adverse employment action. The final step in a prima facie case for a retaliation claim requires that a causal connection exist between plaintiff's termination and the protected conduct. *See Arraleh v. County of Ramsey*, 461 F.3d 967, 977 (8th Cir. 2006). Plaintiff maintains that his participation in protected activities continued through the time of his termination in July 2004. Filing No. 71. The court has carefully evaluated the record to determine what protected activities plaintiff engaged in and at what times.

Plaintiff filed complaints against Jepson and Martin in 2003. Filing No. 73, Attachment 1, Carlton Dep. 155:18-156:1, 159:18-160:17 . Plaintiff reportedly received a letter from Mariette Uwakwe, an EEO Specialist, on October 21, 2003, informing him that the EEO was unable to substantiate his retaliation complaint against Jepson and was therefore closing his file. Filing No. 73, Attachment 1, p. 38. Plaintiff allegedly made his complaint against Martin in "[l]ate 2003," and defendants found insufficient evidence to support his allegations in September 2003. Filing No. 66, Attachment 4, Carlton Dep. 142:20-143:6; Filing No. 66, Attachment 3, Martin Dep. 58:20-59:12, 59:18-61:2; Filing No. 66, Attachment 11, pp. 1-2. By the court's calculation, at least nine months passed between resolution of plaintiff's complaints and the date of his termination.[5]

It is unclear when plaintiff's involvement with Coleman's complaint, a conceded protected activity, ended. According to plaintiff's deposition and plaintiff's EEO Charge of Discrimination, plaintiff allegedly received a letter from Yvonne A. Method-Walker, an EEO compliance manager for defendants, requesting plaintiff's continued involvement in the investigation surrounding Coleman's complaint. *See* Filing No. 73, Attachment 1, Carlton Dep. 97:2-98:17; Filing No. 73, Attachment 1, p. 26 (Charge of Discrimination). Plaintiff maintains he received this letter on March 10, 2004, the same date he purportedly served as a witness for Coleman. Filing No. 73, Attachment 1, p. 26. Assuming, arguendo, that plaintiff's participation with Coleman's complaint ended in March 2004, four months elapsed before defendants terminated plaintiff's employment.

---

[5]Plaintiff allegedly filed a third EEO complaint following his termination. *See* Filing No. 73, Attachment 1, Carlton Dep. 160:2-8. This third complaint is not relevant to the court's analysis of a temporal causal connection as the complaint occurred after and in relation to plaintiff's termination.

The court is aware that a mere coincidence of timing can rarely uphold a submissible case of retaliation. *Thompson v. Bi-State Dev. Agency*, 463 F.3d 821, 826 (8th Cir. 2006). If the factual analysis ended here, the court could conclude that a four-month period of time, and especially a nine-month gap in time, does not support an inference of causation. *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) (interval of two months between complaint and termination could not justify finding a causal link).

However, with its reply brief, the defendants submitted Exhibit 19, a memorandum and order from the United States District Court in the District of Kansas in the case of Autry Coleman vs. Union Pacific Railroad Company, Case. No. 04-1315-JTM. Filing No. 77, p. 3. The Honorable J. Thomas Marten dated this memorandum and order March 6, 2006. *Id.* The memorandum and order does not reference plaintiff. However, this court is hard pressed to conclude that plaintiff's participation in Coleman's complaint ended in March 2004 if he allegedly received a letter asking for his continued participation at that time. Defendants claim plaintiff's participation in Coleman's complaint ended in June 2003 and that a thirteen-month gap exists between the protected activity and plaintiff's termination. Filing No. 64. Plaintiff maintains his participation in protected activities continued until his termination in July 2004. Filing No. 71. Absent evidence to the contrary, the court finds a genuine issue of material fact exists regarding plaintiff's participation in Coleman's discrimination complaint.

The question this court is then faced with is whether allegations of continued participation in an ongoing investigation is sufficient to sustain a temporal causal connection. Evaluating those facts in the light most favorable to plaintiff, the nonmoving

15

party, the court finds a temporal causal connection exists as plaintiff allegedly continued to participate in an ongoing investigation of Coleman's complaint prior to his termination.

In the second step of the *McDonnell Douglas* framework, the burden then shifts to defendants who have articulated a nondiscriminatory reason for terminating the plaintiff. Defendants satisfy that burden by alleging termination premised on an altercation between plaintiff and Coker in violation of Rule 1.7.  Filing No. 64, ¶ 56; Filing No. 73, Attachment 6, p. 20.  The burden then rests with plaintiff to rebut this explanation and prove pretext.

Plaintiff alleges examples of employee altercations where defendants did not pursue Rule 1.7 violations against the employees.  Filing No. 71, ¶¶ 97, 101, 102, 105, 107, 108. Defendants contend that plaintiff's evidence involves incidents after hours that did not involve work related issues.  The court finds that whether plaintiff's examples constitute similarly situated evidence sufficient to establish pretext remains a factual determination for trial.  Accordingly, the court finds that a genuine issue of material fact exists and defendants' motion to dismiss is denied as to plaintiff's claims of retaliation (Counts I, II, and part of Count V).

**Hostile Work Environment**

Due to the terminology used in framing plaintiff's claims, the parties' sparse arguments regarding hostile work environment are contained in the briefs regarding defendants' motion to dismiss.  The court determined plaintiff met his burden of establishing a prima facie case for a hostile work environment claim because plaintiff alleged that he was closely associated with a protected class member; that he was harassed; that a causal connection existed between the harassment and plaintiff's association with the protected class member; that the harassment affected plaintiff's

16

employment; and that plaintiff's employer knew or should have known of the harassment and taken remedial action.  Filing No. 34, ¶ 11.  The parties dispute whether plaintiff is a member of a protected class, the first requirement of a hostile work environment claim. Filing Nos. 37, 38.  Therefore, the court finds a genuine issue of material fact exists regarding plaintiff's status as a protected class member.

As the court stated previously, defendants satisfied the second step of the *McDonnell Douglas* framework because it allegedly terminated plaintiff for his involvement in an altercation in violation of Rule 1.7.  In the final step of the analysis, the parties disputed whether plaintiff's examples constituted similarly situated evidence, and the court determined a factual issue remained concerning whether plaintiff established pretext. Accordingly, defendants' motion for summary judgment on plaintiff's hostile work environment claims (Counts III, IV, and part of V) is denied.

**Motion to Strike**

Plaintiff requests that this court strike defendants' Exhibit 19 offered in support of defendants' motion for summary judgment.  Filing No. 78; Filing No. 77, p. 3.  Exhibit 19 is a memorandum and order from the United States District Court in the District of Kansas in the case of Autry Coleman vs. Union Pacific Railroad Company.  Plaintiff argues that the court may take judicial notice of the Kansas court's ruling, but should not accept the remainder of the order as it lacks foundation and contains inadmissible hearsay.  Filing No. 78. Defendants contend the motion to strike should be denied because it is not requesting that the court rely on findings within the memorandum and order; rather, defendants maintain it offered Exhibit 19 as evidence of whether it had sufficient grounds to terminate plaintiff's employment.  Filing No. 79.  The court will take judicial notice of the case for

17

purposes of establishing plaintiff's timeline as it relates to defendants' motion for summary judgment. Plaintiff's motion to strike is denied as set forth herein without prejudice to reassertion at trial.

ACCORDINGLY, IT IS ORDERED:

1. Defendants' partial motion to dismiss plaintiff's hostile work environment claims (Counts III, IV, and part of V), Filing No. 42, is denied.

2. Defendants' motion for summary judgment on plaintiff's claims (Counts I through V), Filing No. 63, is denied.

3. Plaintiff's motion to strike, Filing No. 78, is denied without prejudice to reassertion at trial.

4. Defendants' objection to plaintiff's motion to strike, Filing No. 79, is sustained.

5. Plaintiff's retaliation claims and hostile work environment claims remain issues for trial (Counts I through V).

DATED this 13th day of November, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge